The **OHIO BANK & SAVINGS CO.,**
Plaintiff-Appellant,

v.

**TRI–COUNTY NATIONAL BANK**
and
William B. Camp, Defendants-Appellees.

No. 18964.

United States Court of Appeals
Sixth Circuit.

June 5, 1969.

Sidney D. L. Jackson, Jr., Cleveland, Ohio, C. Raymond Marvin, Baker, Hostetler & Patterson, Cleveland, Ohio, on brief, for appellant.

John L. Strauch, Cleveland, Ohio, Thomas P. Mulligan, Bertram R. Zweig, Jones, Day, Cockley & Reavis, Cleveland, Ohio, on brief for Tri-County Nat. Bank.

Walter H. Fleischer, Department of Justice, Washington, D. C., Edwin L. Weisl, Jr., Asst. Atty. Gen., Morton Hollander, Atty., Department of Justice, Washington, D. C., Bernard J. Stuplin-

ski, U. S. Atty., Cleveland, Ohio, on brief for William B. Camp.

Before CELEBREZZE and PECK, Circuit Judges, and GORDON *, District Judge.

PECK, Circuit Judge.

On October 28, 1966, the Tri-County National Bank (hereinafter "Tri-County"), a national bank of Fostoria, Ohio, filed an application with the Comptroller of the Currency of the United States (hereinafter "Comptroller") for authority to establish a branch bank in Findlay, Ohio. The application was opposed by the Ohio Bank & Savings Company (hereinafter usually "Ohio Bank"), a state bank located in Findlay. Its protest was based on the ground that the Ohio Banking Law, which authorizes and controls branch banking in Ohio, would not permit Tri-County to establish a branch in Findlay.

The Comptroller approved Tri-County's application to establish the branch upon review of the submitted evidence and after a field investigation and hearing. Following the approval, Ohio Bank brought this declaratory judgment action in the District Court seeking a determination that the issuance of a final Certificate of Authority would be unlawful, and further seeking to enjoin both the Comptroller from issuing the final certificate and Tri-County from establishing a branch in Findlay. The three

parties subsequently submitted motions for summary judgment pursuant to Rule 56, F.R.Civ.P.

The District Judge viewed the case, although before him under motions for summary judgment, as being in the nature of review of the administrative action of the Comptroller (12 U.S.C. §§ 21, 22, 26, 27; see Warren Bank v. Camp, 396 F.2d 52, 56 (6th Cir. 1968)), and found the Comptroller's approval of the establishment of the branch bank to be legal under Ohio law and the equal protection clause of the United States Constitution. The District Court then overruled Ohio Bank's motion for summary judgment and granted the defendants' motions for summary judgment.

National banks are permitted to establish branch banks in the state with the approval of the Comptroller by virtue of 12 U.S.C. § 36(c).[1] Section 36(c) (2) incorporates by reference the applicable state statutory law on branch banking and subjects the branching activities of the national banks to the state law that governs branching for the state banks. The relevant Ohio statute thus made applicable by Section 36(c) (2) is Ohio Revised Code § 1103.09,[2] and it reads as follows:

"No branch bank shall be established until the consent of the superintendent of banks has been obtained, and no bank shall establish a branch bank in any place other than that designated

---

* Honorable James F. Gordon, United States District Judge for the Western District of Kentucky, sitting by designation.

1. Section 36(c) states: "(c) A national banking association may, with the approval of the Comptroller of the Currency, establish and operate new branches: * * * (2) at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition, and subject to the restrictions as to location imposed by the law of the State on State banks."

2. Section 1103.09 was superseded without any changes relevant here by Section 1111.03(A) ORC, effective January 1, 1968. It reads as follows: "(A) No branch shall be established until the consent of the superintendent of banks has been obtained, and no bank shall establish a branch in any place other than that designated in its articles of incorporation as its principal place of business, except in a municipal corporation contiguous to such designated place, or in other parts of the county in which the municipal corporation in which the principal place of business of the bank is located * * *."

For convenience, reference will be made throughout this opinion to the statute as Section 1103.09.

in its articles of incorporation, except in a municipal corporation contiguous to such designated place, *or in other parts of the county in which the municipal corporation containing the main bank is located * * *.*" (Emphasis added.)

Ohio Bank contends that the above section would permit branching only in Seneca County since that is the county in which Tri-County's main office is physically located.[3] The District Court's determination was that the plain meaning of ORC § 1103.09 permits branch banking, upon approval, in any county in which the municipality containing the main bank is located. The District Court's construction of this Ohio Banking Law is one of first impression for either the Ohio state courts or the federal courts. Therefore, the question to be decided here is whether a bank, with its main office in a municipality that is located in more than one county, is permitted under ORC § 1103.09 to branch into each county. In the terms of this case, the question becomes whether Tri-County, a national bank located in Fostoria, Ohio, which city is located primarily in Seneca County, with parts also located in Hancock and Wood Counties, is permitted under ORC § 1103.09 to establish a branch in Findlay, Hancock County, Ohio. An alleged equal protection violation that arises from the District Court's construction of ORC § 1103.09 is also at issue.

■ Ohio Bank argues that the word "located" in ORC § 1103.09 has a technical meaning and that a municipality can only be located in one county, namely that in which it has its seat of government. Fostoria's city hall is in Seneca County, and under Ohio Bank's view the fact that the municipality extends into two other counties is immaterial, and for purposes of the statute Fostoria is located only in Seneca County. We agree with the District Court's conclusion that such construction is too narrow. The term is used in a nontechnical manner, and we conclude that the "location" should be accorded its ordinary meaning, and therefore that Fostoria is "located" in Seneca, Hancock and Wood Counties.

The appellees rely on the plain meaning of the statute, with assistance from the rules of construction provided for in the general provisions of the Ohio Revised Code. The first such construction rule is contained in ORC § 1.10(C), which provides:

"As used in the Revised Code, unless the context otherwise requires:

\* \* \* \* \* \*

"(C) Words in the plural number include the singular number, and words in the singular number include the plural number." ORC § 1.10(C) (1953).

Ohio Bank contends that resort to this statute is not required because the clear legislative intent was for a county, and not counties, to be the geographically defined limit for branching. Ohio Bank argues that the legislature intentionally used the singular to avoid statewide branch banking and thereby established a competitive system of equality.

■ In spite of this argument we deem it clear that the statute does not limit branching to a single county. Actually, before the recodification of the Ohio code in 1953, the General Code section on branch banking read "in other parts of the *county or counties* in which the municipal corporation containing the main bank is located."[4] The legislature deleted the words "or counties" in the recodification, but a reading of Section 1.10(C) ORC (supra) with Section 1.24 ORC makes it clear that a substantive change was not intended. The latter section unequivocally states that

---

3. Fostoria, Ohio, and Findlay, Ohio, are not contiguous municipalities, and we are not here concerned with the exception dealing with that situation.

4. Ohio General Code § 710–73. (Emphasis added.)

no change of the law was intended by the recodification:

"[I]n enacting this act it is the intent of the General Assembly not to change the law as heretofore expressed by the section or sections of the General Code in effect on the date of enactment of this act. The provisions of the Revised Code relating to the corresponding section or sections of the General Code shall be construed as restatements of and substituted in a continuing way for applicable existing statutory provisions, and not as new enactments." ORC § 1.24 (1953).

This history prior to the recodification, and the enactments of Sections 1.10(C) and 1.24 ORC, refute Ohio Bank's argument that the purpose of the branching statute was to adhere to one-county branch banking. However, accepting arguendo Ohio Bank's contention that the legislature intended to permit the establishment of competitive banks with generally equal service areas, it is observed that the construction here placed on ORC § 1103.09 is more, not less, attuned to that end than is the single county construction urged by Ohio Bank. Definition of service areas by political boundaries might be ideal if each county's principal municipality lay in its geographical center. Not only is this not true, however, but in a great many instances the city and county have a common boundary, which automatically locates the city at the county's edge. It is therefore more reasonable to conclude that the General Assembly intended to make banking service areas available on the basis of communities of interest rather than on political demarcations, which as often as not are without commercial significance. The legislature recognized this circumstance and made appropriate accommodation where two municipalities share a common boundary by permitting, in the same statute, branch banking to extend into the contiguous village or city. Lest it be felt that we are stretching the usual guidelines of statutory construction to reach the strained result that the legislative purpose was solely to meet the problem created by Fostoria's existence in three counties, we judicially notice that there are at least thirty-two Ohio municipalities which cross county lines.

As has been hereinabove indicated, a principal contention of the plaintiff-appellant is that it is entitled to the relief sought under the equal protection clause of the Constitution. This argument, in effect, is that if the legislature did in fact intend to permit banks in multicounty muncipalities to branch into counties contiguous to both (or all) of those in which they are located, Ohio Bank and all other banks located in a single county are being unconstitutionally deprived of an equal opportunity to serve a comparable area through branch banks. This argument is based upon the first section of the Fourteenth Amendment to the Constitution, which provides that no state shall deny "to any person within its jurisdiction the equal protection of the laws." However, we find no case which in our view extends the right of "equal protection of the laws" to the point here urged by Ohio Bank. While precise equality will always remain a laudable goal, it is probable that it will as eternally remain beyond the orbit of achievement. It therefore becomes apparent that a realistic approach must be made and that recognition be accorded the fact that broad discretion must be allowed the legislature. Such recognition is extended in the opinion of the Supreme Court in McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), wherein the Court considered problems arising out of prosecutions under Sunday closing laws. These guidelines are therein offered (pp. 425–26, 81 S.Ct. p. 1105):

"Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the

achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. See Kotch v. Board of River Port Pilot Comm'rs, 330 U.S. 552 [67 S.Ct. 910, 91 L.Ed. 1093]; Metropolitan Casualty Ins. Co. v. Brownell, 294 U.S. 580 [55 S.Ct. 538, 79 L.Ed. 1070]; Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61 [31 S.Ct. 337, 55 L.Ed. 369]; Atchison, T. & S.F.R. Co. v. Matthews, 174 U.S. 96 [19 S.Ct. 609, 43 L.Ed. 909]."

The question therefore presented on the present record is whether the division of all banks into two categories, namely, those situate in municipalities located in one county and those situate in municipalities located in two or more counties, is "wholly irrelevant to the achievement of the State's objective." The District Court concluded that in the present situation there was a reasonable basis for the legislative classification since "each county which extends into a multi-county municipality is likely to be closely related in an economic, financial and sociological sense to that municipality, and to banks with main offices in that municipality." We are in accord with that expression, and conclude that the Ohio General Assembly had a reasonable basis for making the classification under examination. Specifically, we hold that ORC § 1103.09, made applicable to national banks by 12 U.S.C. § 36(c) (2), permits Tri-County bank, of Fostoria, which has its seat of government in Seneca County, Ohio, but which extends into Hancock and Wood Counties, upon the approval of the Comptroller to establish a branch in the City of Findlay, Hancock County, Ohio.

This determination will be found to be in accord with the opinion in Lindsley v. Natural Carbonic Gas Co., *supra*, which like *McGowan* holds that a legislative classification will be found to deny equal protection only if it does not rest upon any reasonable basis and is therefore purely arbitrary. *Lindsley* further stands for the proposition that a classification does not deny equal protection merely because it results "in some inequality" or because the classification is not made with "mathematical nicety." (220 U.S. 61, at 78, 31 S.Ct. 337.)

One final point merits comment. This concerns Ohio Bank's contention that the construction of the statute here adopted will "reduce the branch banking statute to a ludicrous facade" by permitting banks situate in municipalities located in two or more counties to unreasonably extend themselves, or will result in numerous banks changing their principal place of business in order to take advantage of multi-county branching possibilities. However, these assertions fail to take into account the prerequisite of administrative approval by the appropriate banking authority for any relocation or branching. Such approval in turn depends primarily upon the convenience and need of the public, and in general upon what is determined to be in the best interests of the economic community. We find the contentions of the plaintiff-appellant in this regard unpersuasive.

Affirmed.