Richard A. BOWER, Plaintiff–Appellant,

v.

FEDERAL EXPRESS CORPORATION, Defendant–Appellee.

No. 95–5511.

United States Court of Appeals, Sixth Circuit.

Sept. 18, 1996.

Connie K. Westbrook (argued and briefed), Memphis, TN, for plaintiff–appellant.

Steven H. Taylor (argued and briefed), Virginia E. Gandy (briefed), Federal Express Corp., Memphis, TN, for defendant–appellee.

Before: MILBURN and BOGGS, Circuit Judges; and QUIST, District Judge.*

---

* The Honorable Gordon J. Quist, United States District Judge for the Western District of Michi-gan, sitting by designation.

BOGGS, Circuit Judge.

This case presents a statutory interpretation issue of first impression arising under the Air Carriers Access Act of 1986 ("ACAA"). Richard A. Bower, a handicapped individual, appeals from the district court's dismissal of his employment benefits discrimination complaint under Fed.R. 12(b)(6) for failure to state a claim upon which relief can be granted and we now reverse.

## I

Most of the facts in this case are uncontroverted, having been stipulated to by the parties. Federal Express Corporation ("FedEx") provides to its employees the fringe benefit of riding "jumpseat," which means that FedEx, a Federal Aviation Administration ("FAA") certificated all-cargo carrier, allows its employees to use the limited passenger seating available on its cargo flights. FedEx uses aircraft with various numbers of available jumpseats, ranging from two to nineteen, although most aircraft have only two to eight such seats. FedEx does not have any ramps or terminals open to the general public. Nor does FedEx issue what are commonly thought of as tickets to its employees riding jumpseat, although FedEx does maintain a "flight release" roster, which lists those employees who are authorized to ride jumpseat on particular flights.

Richard A. Bower was born with spina bifida, which requires him to use crutches and wear leg braces. He is disabled within the meaning of the Rehabilitation Act of 1973 (29 U.S.C. § 601 et seq.) and within the meaning of the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.) ("ADA"). Bower has been employed by FedEx for nearly seven years. He now holds the position of Senior Global Operations Control Specialist. Bower dispatches aircraft over assigned routes and helps to insure the orderly movement of freight on FedEx aircraft. He also arranges for the ground transportation of freight. FedEx has never allowed Bower to ride jumpseat, ostensibly for safety reasons.[1] Bower has requested reasonable accommodation of his disability, but this has been denied by FedEx. Despite his disability, Bower has been permitted to ride jumpseat by cargo carriers he has worked for in the past, including United Parcel Service and Airborne Express. Bower is an FAA-certified aircraft dispatcher. For this reason, he is required by FAA regulations to ride jumpseat a specified number of hours each year to maintain his license.[2] On January 4, 1995, Bower's attorney swore to an affidavit stating that the Department of Transportation ("DOT") holds that FedEx is covered by the ACAA. Bower's counsel avers in the affidavit, attached to a motion to extend the time for responding to FedEx's motion to dismiss, that she confirmed this information with Ira Laster and Alexander Mallard (in the Office of General Counsel for Litigation) at DOT.[3]

On October 24, 1994, Bower filed a complaint against FedEx, alleging violations of the Rehabilitation Act of 1973, the ACAA, and the Tennessee Discrimination Act.[4] On December 2, 1994, FedEx filed a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss the complaint for failure to state a

---

1. FedEx maintains that it does not permit Bower to ride for unspecified safety reasons, citing to the stipulations between the parties. However, these stipulations do not indicate why Bower has been denied the benefit of riding jumpseat. FedEx hints that the reason it denied jumpseating to Bower was because Bower would not be capable of exiting the aircraft without assistance in the 90 seconds required by the Federal Aviation Regulations relating to emergency evacuation procedures, 14 C.F.R. § 121.291(a). Bower disputes that he has been denied the benefit of riding jumpseat for safety reasons. Although nothing hinges on it, we assume, given the procedural posture of this case, that FedEx lacks a legitimate nondiscriminatory reason for not allowing Bower to ride jumpseat on its aircraft.

2. Bower's need for FAA certification may also be in dispute because the parties did not stipulate to this fact. Bower merely alleged it in his complaint. Its relevance is minimal, but given that the district court dismissed Bower's complaint for failure to state a claim, we assume that for Bower riding jumpseat is more important than the other, run-of-the-mill fringe benefits provided to him by his employer.

3. Of course, DOT's position does not foreclose our de novo review of this legal question.

4. It is unknown why Bower did not plead a cause of action under the ADA.

claim upon which relief can be granted. The district court granted the motion to dismiss on March 6, 1995, holding that FedEx was not covered by the ACAA and that there was no private cause of action under Section 503 of the Rehabilitation Act of 1973. The court then declined to exercise supplemental jurisdiction over Bower's Tennessee Discrimination Act claim. Bower appealed only the district court's dismissal of his ACAA-based claim.

## II

■■■ We review *de novo* a district court's dismissal of a complaint for failure to state a claim under Rule 12(b)(6). *In re DeLorean Motor,* 991 F.2d 1236, 1239–40 (6th Cir.1993). We must treat as true all of the well-pleaded allegations of the complaint. *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 1, 97 S.Ct. 2490, 2492 n. 1, 53 L.Ed.2d 557 (1977); *Saylor v. Parker Seal,* 975 F.2d 252, 254 (6th Cir.1992). All allegations must be construed in the light most favorable to the plaintiff. *Sinay v. Lamson & Sessions,* 948 F.2d 1037, 1039 (6th Cir.1991). In order for a dismissal to be proper, it must appear beyond doubt that the plaintiff would not be able to recover under any set of facts that could be presented consistent with the allegations of the complaint. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Lamb v. Phillip Morris, Inc.,* 915 F.2d 1024, 1025 (6th Cir.1990).

### A. Which Version of the ACAA Applies to this Case?

■■ Neither the parties nor the district court focused very much on which version of the ACAA should govern this case. On July 5, 1994, more than three months before Bower filed his complaint, Congress enacted

Pub.L. 103–272, 108 Stat. 1141, now codified at 49 U.S.C. § 40101–49105. Public Law 103–272 represented a revision without substantive change of certain general and permanent laws related to transportation, including the ACAA. H.R.Rep. No. 180, 103d Cong., 1st Sess. (1994), *reprinted in* 1994 U.S.C.C.A.N. 818. Bower's complaint did not specify whether he was suing under the previous or current codification of the ACAA. FedEx's motion to dismiss cited the previous version of the statute. The district court seems to have uncritically accepted FedEx's assertion that the previous version of the statute applies to this case.[5] Only in his reply brief before our court does Bower seem to realize that the current version of the statute may apply.[6] Bower's reply brief, however, does not clearly request that we apply the current version of the statute—his reply brief seems to be only an attempt to refute the argument that application of the current version of the statute would change the outcome of this appeal. Nor does Bower indicate in his complaint the dates of the occasion(s) when he was denied the ability to ride jumpseat on FedEx's aircraft. He does note in his complaint that he is challenging FedEx's "policy" of not allowing handicapped individuals like him to ride jumpseat.[7] Thus, it seems reasonable to assume, especially given the applicable standard of review, that Bower was challenging a FedEx practice that was still in effect at the time he filed his complaint. As a result, the parties and district court erred in assuming that the old version of the statute should be applied instead of the new codification. Nevertheless, the older version of the statute remains relevant to the proper disposition of this case for reasons that will become apparent below.

5. FedEx's choice to argue that the older version of the statute applies seems to have been deliberate because the statutory citations in its motion to dismiss are to the United States Code Appendix, where the repealed version of the statute now resides. FedEx at no point in its motion made any attempt to justify its choice of the original codification, however.

6. Bower erroneously cites the old version of the statute to the current United States Code and the new version to the United States Code Appendix.

7. We do not reach the question of whether Bower has standing to challenge this general policy, since FedEx has stipulated that it has previously denied Bower the ability to ride jumpseat on its aircraft. Bower certainly has standing to challenge FedEx's actions with respect to the specific occasions he was denied the right to jumpseat, assuming a private right of action exists under the ACAA. *See infra* n. 9.

### B. The ACAA's Ban on Discriminating Against Passengers

The central statutory provision in this case is 49 U.S.C. § 41705, which states:

In providing air transportation, an air carrier may not discriminate against an otherwise qualified individual on [any one of] the following grounds: (1) the individual has a physical or mental impairment that substantially limits one or more major life activities[;] (2) the individual has a record of such an impairment[;] (3) the individual is regarded as having such an impairment.

The parties have essentially stipulated that Bower meets at least one of the requirements in subsections (1)–(3), as these prohibitions track those in the ADA. *Compare* § 41705(1)–(3) *with* 42 U.S.C. § 12102(2)(A)–(C). The tricky questions presented in this is appeal are whether FedEx is "an air carrier" "providing air transportation" and whether Bower is "an otherwise qualified individual."

### 1. FedEx Is an "Air Carrier"

■ Resolving this appeal requires us only to follow the definitions in the United States Code from term to term. The term "air carrier" in the ACAA is defined as "a citizen of the United States undertaking by any means, directly or indirectly, to provide air transportation." 49 U.S.C. § 40102(a)(2). "Air transportation" is in turn defined as "foreign air transportation, interstate air transportation, or the transportation of mail by aircraft."[8] "Foreign air transportation" and "interstate air transportation" are in turn both defined as "the transportation of passengers *or property* by aircraft as a common carrier for compensation, or the transportation of mail by aircraft." 49 U.S.C. § 40102(a)(23), (25) (emphasis added). FedEx obviously transports "property" across state lines. Thus, we hold that FedEx is an "air carrier" for purposes of § 41705.[9] Cargo carriers may not discriminate in the provision of air transportation against "otherwise qualified individuals." This conclusion is reinforced by noting that FedEx concedes that it is an all-cargo air carrier. The ACAA defines "all-cargo air transportation" as "the transportation by aircraft in interstate air transportation of only property or only mail, or both." 49 U.S.C. 40102(a)(10). And "cargo" is defined as "property, mail, or both." 49 U.S.C. § 40102(a)(12). FedEx is without doubt subject to the ACAA, specifically § 41705, and the district court's decision to the contrary must be reversed. As we discuss below, the district court relied exclusively on its interpretation of a regulation that may be in contravention of the underlying statute.

A number of other factors support our conclusion, First, the same result would be reached under the previous version of the statute. The most important definition in the previous version of the statute, 49 U.S.C.App. § 1301(24), for the terms "interstate air transportation" and "foreign air transportation," refers to the transportation of "property," just as the current version of the statute does. 49 U.S.C. § 41012(a)(23), (25). Moreover, when Congress passed

---

8. Although FedEx is generally thought of as an alternative carrier of mail, it might not be a carrier of "mail" within the meaning of the ACAA because this term is defined to include only the carriage of "United States mail and foreign transit mail." 49 U.S.C. § 40102(29). The record does not reflect whether the United States Post Office ever rents cargo space on FedEx's aircraft for the purposes of transporting United States mail or whether FedEx ever carries "foreign transit mail." We do not need to decide the question of whether FedEx carries "mail" under the ACAA, however, because for our purposes it is sufficient that FedEx carries "property" within the meaning of the ACAA.

9. Our holding is limited to the conclusion that the ACAA's anti-discrimination provision in § 41075 applies to cargo carriers. We do not address the question of whether a private right of action exists under the ACAA. *See, e.g., Shinault v. American Airlines, Inc.,* 936 F.2d 796, 800 (5th Cir.1991) (holding that private right of action exists); *Tallarico v. Trans World Airlines, Inc.,* 881 F.2d 566, 570 (8th Cir.1989) (same); *Adiutori v. Sky Harbor Int'l. Airport,* 880 F.Supp. 696, 700 (D.Ariz.1995) (noting that it was not disputed by the litigants that the ACAA provided for a private right of action); *Americans Disabled for Accessible Public Transp. (ADAPT), Salt Lake Chap. v. SkyWest Airlines, Inc.,* 762 F.Supp. 320, 326 (D.Utah 1991) (assuming without comment that private right of action existed). *See generally* Nancy Eisenhauer, Comment, *Implied Causes of Action under Federal Statutes: The Air Carriers Access Act of 1986,* 59 U.Chi.L.Rev. 1183 (1992).

Pub.L. No. 103–272, recodifying § 41705, it indicated that it did not want to make any substantive changes to the existing legislation:

> *Substantive change not made.*—As in other codification bills enacting titles of the United States Code into positive law, this bill makes no substantive change in the law. It is sometimes feared that mere changes in terminology and style will result in changes in substance or impair the precedent [*sic*] value of earlier judicial decisions and other interpretations. This fear might have some weight if this were the usual kind of amendatory legislation when it can be inferred that a change of language is intended to change substance. In a codification law, however, the courts uphold the contrary presumption: the law is intended to remain substantively unchanged.

H.R.Rep. No. 180, 103d Cong., 1st Sess. (1993), *reprinted in* 1994 U.S.C.C.A.N. at 822 (1994). The House Report then went on to cite various authorities that it relied upon for the canon of statutory interpretation applicable to codifications and recodifications. *See, e.g.,* Finley v. United States, 490 U.S. 545, 555, 109 S.Ct. 2003, 2010, 104 L.Ed.2d 593 (1989) ("no changes in law or policy are to be presumed from changes of language in the revision unless an intent to make such changes is clearly expressed") (quoting *Fourco Glass v. Transmirra Prods. Corp.,* 353 U.S. 222, 227, 77 S.Ct. 787, 790–91, 1 L.Ed.2d 786 (1957)); *United States v. Ryder,* 110 U.S. 729, 740, 4 S.Ct. 196, 201, 28 L.Ed. 308 (1884) ("It will not be inferred that the legislature, in revising and consolidating the laws, intended to change their policy, unless such intention be clearly expressed."). The Sixth Circuit has followed this rule in at least two cases. *See, e.g., United States v. Lanier,* 73 F.3d 1380, 1387 (6th Cir.1996) (en banc), *cert. granted,* —— U.S. ——, 116 S.Ct. 2522, 135 L.Ed.2d 1047 (1996); *Ohio Bank & Savings v. Tri–County Nat'l Bank,* 22 Ohio Misc. 270, 411 F.2d 801, 803–04 (6th Cir.1969) (applying canon to a state law).

Second, the Secretary of DOT has the authority to exempt any all-cargo carrier from § 41705 by the issuance of a certificate under 49 U.S.C. § 41103(d)(1)(B).[10] But the Secretary has not chosen to grant such an exemption certificate to FedEx.

Third, certain FAA regulations[11] cited by FedEx for the opposite proposition actually support our conclusion that FedEx is an "air carrier" within the meaning of § 41705. FedEx argues that 14 C.F.R. § 121.583(a)(1)–(2) exempts it from the requirements imposed on passenger airlines. FedEx selectively and disingenuously quotes from this regulation, however. Section 121.583(a) reads in relevant part:

> Carriage of persons without compliance with the passenger-carrying requirements of this part.
>
> (a) When authorized by the certificate holder, the following persons, but no others, may be carried aboard an airplane without complying with the passenger-carrying requirements in §§ 121.309(f) [megaphones], 121.310 [mandating additional emergency equipment such as interior emergency exit markings], 121.391 [flight attendants], 121.571 [briefing passengers before take-off], and 121.587 [closing and locking of flight crew compartment door]; the passenger-carrying operation requirements in §§ 121.157(c) [relating to C–46 type airplanes], 121.161 [relating to airplane limitations on type of route], and

---

**10.** Section 41103 reads in relevant part:

All-cargo air transportation certificates of air carriers

 \* \* \* \* \* \*

 (d) Exemptions and status.—A citizen issued a certificate under this section—

 (1) is exempt in providing the transportation under the certificate from the requirements of—

 \* \* \* \* \* \*

 (B) other provisions of this part [Part A including 49 U.S.C. §§ 40101–46507] and reg-ulations or procedures prescribed under those provisions when the Secretary finds under regulations of the Secretary that the exemption is appropriate. . . .

**11.** Some of the regulations applicable to this case have been promulgated by the FAA, by DOT, or by both. Regulations contained in 14 C.F.R. Pts. 1–199 have been promulgated by the FAA or by both the FAA and the DOT. Regulations contained in 14 C.F.R. Pts. 200–399 have been promulgated exclusively by the DOT.

121.291 [demonstration of emergency evacuation procedures]; and the requirements pertaining to passengers in §§ 121.285 [carriage of cargo in passenger compartments], 121.313(f) [mandating door between passenger and pilot compartments], 121.317 [passenger information such as seat belt signs], 121.547 [limiting admission to flight deck], and 121.573 [briefing passengers on extended overwater operations]:

 (1) A crewmember.

 (2) A company employee.

FedEx omitted all of the specific references to particular regulations in § 121.583(a), thereby giving a reader of its brief the distinct impression that § 121.583(a) expansively exempted flight operations such as FedEx's jumpseating program, which can be used only by company employees, from *all* passenger airline requirements. Again, the district court uncritically accepted FedEx's selective quotation of the regulation.

Section 121.583(a) does not support FedEx's argument, most importantly because the regulation provides an exemption to a cargo carrier only from FAA regulations; it does not and could not—without the issuance of an exemption certificate pursuant to § 41103(d)(1)(B)—relieve FedEx of its obligation to comply with the statutory provisions of the ACAA including § 41705. Moreover, FedEx remains obliged to comply with all regulations not specifically listed in § 121.583(a). These include, for example, 14 C.F.R. §§ 121.311–312, which require safety belts for passengers and fire protective seat cushions for passengers. So, while FedEx does not have to provide overhead luggage compartments on its cargo airplanes under 14 C.F.R. § 121.285 in order to run a legal jumpseating program, it must still provide seat belts for its jumpseat riders. Not surprisingly, the safety regulations applied to cargo carriers like FedEx are more limited than those applying to passenger airlines, but FedEx's carriage of passengers is not completely unregulated.

Fourth, DOT's regulations specifically contemplate that some passengers will not generate any revenue for an air carrier. *See* 14 C.F.R.Pt. 241 § 03 (defining "passenger, nonrevenue"). It would not be necessary to make this distinction if those riding jumpseat on a cargo carrier were completely beyond the protection of the ACAA and the FAA's regulations. It only makes sense to make this distinction if the agency intends to protect, or otherwise treat, non-revenue passengers, who obviously will normally comprise all of those onboard a cargo plane, in a different way than revenue passengers.

### 2. *Chevron* and the Regulatory Definition of "Qualified Handicapped Individual"

■ FedEx's strongest argument for avoiding the conclusion that it owes to Bower an ACAA duty not to discriminate against him is based on a regulatory definition of the term "qualified handicapped individual." Indeed, this is the principal argument that the district court accepted when it dismissed Bower's complaint for failure to state a claim. The regulatory definitions of some of the statutorily undefined terms in the ACAA are set out in 14 C.F.R. § 382.5. A related regulation makes it clear that § 382.5 is meant to define the terms in what has now been recodified by Congress as 49 U.S.C. § 41705. *See* 14 C.F.R. § 382.1 (the purpose of 14 C.F.R. Part 382 is to implement the ACAA, specifically the former 49 U.S.C. § 1374(c), now at 49 U.S.C.App. § 1374(c), currently codified at 49 U.S.C. § 41705). The heart of FedEx's argument is that the definition of "qualified handicapped individual" given in § 382.5 strongly implies that only passenger airlines can be termed "air carriers." The relevant portion of § 382.5 provides:

*Qualified handicapped individual* means an individual who—

(a) With respect to accompanying or meeting a traveler, use of ground transportation, using terminal facilities, or obtaining information about schedules, fares or policies, takes those actions necessary to avail himself or herself of facilities or services offered by an air carrier to the general public, with reasonable accommodations, as needed, provided by the carrier;

(b) With respect to obtaining a ticket for air transportation on an air carrier, offers, or makesa good faith attempt to offer, to purchase or otherwise validly to obtain such a ticket;

(c) With respect to obtaining air transportation, or other services or accommodations required by this part:

(1) Purchases or possesses a valid ticket for air transportation on an air carrier and presents himself or herself at the airport for the purpose of traveling on the flight for which the ticket has been purchased or obtained; and

(2) Meets reasonable, nondiscriminatory contract of carriage requirements applicable to all passengers

. . . .

Section 382.5 thus defines the ambiguous statutory term "qualified handicapped individual" as a handicapped individual who has been discriminated against in one of three ways: (1) in the use of ground facilities offered to the general public; (2) in the sale of tickets; (3) in the provision of air transportation itself if the handicapped individual (a) has a ticket and (b) meets reasonable nondiscriminatory conditions applicable to all passengers. The district court ruled that § 382.5 did not make sense in the context of

FedEx's jumpseat program because FedEx's ground facilities are not available to the general public and it does not sell tickets.[12] The plausibility of the district court's interpretation of the statute and the regulations is enhanced by the definition of "air transportation" in § 382.5, which specifically carves out the transportation of mail—something it seems unnecessary to do if the word "transportation" already covers both the transportation of cargo and passengers.[13]

■ There are three major problems with the district court's and FedEx's analysis. First, the canon of statutory interpretation that allows courts to ignore the plain meaning of statutes when to do so would create "absurd results" (especially in light of constitutional concerns, the statute's structure or other equally clear statutory provisions), cannot be based on absurd results stemming from *regulatory* provisions. *See, e.g., Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 510–11, 109 S.Ct. 1981, 1985–86, 104 L.Ed.2d 557 (1989) (refusing to adhere to the plain meaning of Fed.R.Evid. 609(a)(1) because of Fifth Amendment due process concerns); *Rector, etc. of Holy Trinity Church v. United States*, 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892) (refusing to

**12.** Bower argued that FedEx's flight release is the functional equivalent of a ticket and that under § 382.5 he need not purchase a ticket, but can either purchase a ticket *or* "otherwise validly obtain" one. In conjunction with this analysis, Bower argues that the consideration for jumpseating he provides to FedEx, like the price paid for a "ticket," is his labor. The district judge thought this argument an "attempt to mince words" that, if pressed, would get Bower's counsel "in trouble in [his] court." The district court even went so far as to raise the specter of sanctioning Bower's counsel under Fed.R.Civ.P. 11. As Bower points out in his brief, however, ValuJet Airlines bills itself as a ticketless airline. In theory, any airline could do what Bower claims ValuJet does, which is maintain a list of passengers who had paid a fare and allow only those passengers to board a particular flight. Of course, we recognize that ValuJet actually issues reusable laminated numbered cards to its passengers when they check in for a flight. Passengers then are called to board in groups of ten to twenty, with a flight attendant collecting each card before permitting boarding. FedEx could easily argue that ValuJet's numbered boarding card is a ticket, to which we suppose the re-

sponse would be that boarding passes and tickets are different items. Bower properly notes that it would seem absurd for a major passenger carrier to maintain it ceased being covered by the ACAA simply because it instituted a ticketless system. Bower's aggressive reading of the regulations hardly appears sanctionable. It does not seem likely that DOT intended to make protections for the handicapped hinge on functionally insignificant distinctions between tickets, boarding passes, and flight rosters.

**13.** On the other hand, problems arise with the district court's argument that § 382.5 does not make sense in the context of anything but a passenger airline once one realizes that "air transportation" is a term that must also cover the carriage of mail. Under the district court's reading of § 382.5, mail carriers would not be covered by the ACAA either; yet this contradicts both other regulations and the statute itself. The best interpretation of the purpose of the carve-out for mail carriers in § 382.5 is that Congress sought to distinguish mail carriage from other kinds of cargo carriage, not that Congress sought to exclude non-mail cargo carriers from coverage by the ACAA. *See supra* n. 8.

adhere to plain meaning of an immigration statute because it would have impacted adversely on clergy members). As should be obvious from Article I of the Constitution's grant of lawmaking authority to Congress, an absurd result in applying a statute caused by regulations, rather than calling into question the statutory provisions, calls into question the regulatory provisions.

Second, the statutory term whose ambiguity might open the path to *Chevron* deference in this case exists only in the former version of § 41705. *See Chevron, U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) (setting up a two-step process for reviewing an agency's construction of a statutory term in a regulation: (1) if the statutory term is unambiguous, the agency is bound by the plain meaning of the statutory term and has no authority to issue a regulation that contradicts that plain meaning; (2) if the statutory term is ambiguous, then an agency has the authority to issue a regulation interpreting the unclear term as long as its interpretation is reasonable). The new version of the statute uses only the phrase "qualified individual," a term which is not defined in § 382.5.

Third, the regulations, if they mean what FedEx claims they mean, violate step one of *Chevron* because it is clear that § 41705 applies to FedEx through the definition of "air carrier" and related terms contained in § 41102(a).

The second problem can be rebutted by FedEx rather easily by invoking the canon we noted above that recodifications will not be read to create substantive changes in the law unless Congress clearly states such an intention. Whether the omission of the word "handicapped" from the revised statute is deliberate or accidental, under the recodification canon no significance can be ascribed to such a change in the statutory language without a clear statement by Congress to the contrary. There is no such clear statement by Congress in the ACAA. Because of the recodification canon, this regulatory definition of the term "qualified handicapped individual" must now be read to apply to the term "qualified individual" in § 41705.

FedEx cannot as easily overcome the first and third problems, however. To the extent that FedEx is arguing (and the district court held) that the definition of "qualified handicapped individual" in § 382.5 impliedly excludes FedEx from being an "air carrier" for the purposes of § 41705, that regulation is not entitled to *Chevron* deference because it is outside the plain meaning of § 41705, given the statutory definitions associated with that provision. Under *Chevron*'s first step, the agency has no discretion to define the term "air carrier" in any fashion inconsistent with the terms of the ACAA itself, which clearly covers cargo carriers. We also note that, while not dispositive, Bower's counsel's uncontradicted affidavit indicating that DOT maintains that FedEx is covered by the ACAA supports our *Chevron* analysis—even DOT does not seem to interpret its own regulations in the way FedEx does.

 Our conclusion is also reinforced by recognizing that the congressional delegation to an agency of the power to issue regulations interpreting a statute extends *only to the proper extent of* ambiguities in the statute. The term "qualified [handicapped] individual" in § 41705 is ambiguous enough to trigger *Chevron* deference, but it is not the statutory provision primarily at issue here. Rather, the statutory term "air carrier" is the one truly central to this case. The administrative agency in this case, DOT, could not have used ambiguity in another term of the statute—the "qualified [handicapped] individual" term—to ignore the plain meaning of "air carrier" in the ACAA. Ambiguity anywhere in a statute is not a license to the administrative agency that interprets the statute to roam about that statute looking for other provisions to narrow or expand through the process of definition. The delegated authority to interpret an ambiguous term extends only to the specific subject matter covered by the ambiguous term. Statutory terms with plain meanings determine their own scope of operation, which cannot be diminished by ambiguities elsewhere in the same statute.

 A corollary of this proposition is that even facially ambiguous provisions can have

their meanings clarified and rendered unambiguous by reference to the statute's structure or to other unambiguous terms in the statute. *K mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 1817–18, 100 L.Ed.2d 313 (1988); *Bethesda Hosp. Ass'n v. Bowen,* 485 U.S. 399, 403–05, 108 S.Ct. 1255, 1258–59, 99 L.Ed.2d 460 (1988). Here, for instance, the agency could have decided to define out of the "qualified [handicapped] individual" statutory term discrimination in the provision of ground services without violating *Chevron* step one. Or it could have placed *some* discrimination by cargo carriers outside of the protection of the ACAA. Such regulatory moves would have been subject only to *Chevron* reasonability review at step two. There is nothing in plain text of § 41705 of the ACAA that requires all forms of discrimination against the handicapped or every kind of air carrier to be treated identically. However, the agency cannot define "qualified [handicapped] individual" in any way that defeats the clear scope of the statute itself, which plainly extends to the transportation by air of "property" and therefore to cargo carriers. FedEx's interpretation of § 382.5 would exclude *all* forms of discrimination in the provision of "air transportation" to "qualified [handicapped] individuals" by cargo carriers from the coverage of the ACAA. This interpretation defeats the clear scope of the statute itself and, if correct, would inevitably lead to the conclusion that this regulation violates step one of *Chevron.* The interlocking definitions of the terms used in the ACAA require that *some* discrimination by cargo carriers must be prohibited by § 41705.

The district court missed the unambiguous definitions provisions of the ACAA.[14] The moving force behind its Rule 12(b)(6) dismissal was obviously the argument that § 382.5's definition of "qualified handicapped

individual" is nonsensical in the context of a cargo carrier. We recognize that there is no simple refutation of this argument. Instead of ending its analysis at this point, however, the district court should have considered the possibility that DOT had simply drafted a regulation that overlooked the possibility of discrimination against nonrevenue passengers on cargo airlines (indeed, in this context, the DOT may have overlooked the existence of such passengers entirely). It is highly likely that DOT simply neglected to define what discrimination against a "qualified [handicapped] individual" would consist of in the cargo carrier context. The question posed at the highest level of abstraction by such a possibility is: What should a court do if a regulatory agency appears to make an unwarranted assumption about one provision of the organic statute it is charged with interpreting when it promulgates a regulation under a different provision? If Bower decides to continue pressing his claims against FedEx under the ACAA, it may become necessary at some point for the district court to address the question of who is a "qualified individual" under § 41705 in the cargo carrier context. At that point, the district court will have two choices: (1) entirely ignore the regulatory definition of "qualified handicapped individual" in § 382.5 (because it is inapplicable in the cargo carrier context) and interpret the term "qualified individual" in § 41705 without regulatory assistance; or (2) use the definition in § 382.5 for interpretive guidance, without applying its requirements too literally to bar, in violation of the plain terms of the ACAA, all discriminatory air transportation claims by the handicapped against cargo carriers. Option 2 seems the more sensible approach because it retains the greatest possible deference to DOT, but we express no opinion on whether this approach is compulsory.[15] In

---

**14.** The Joint Appendix does not include Bower's response to the motion to dismiss, so it is difficult to know whether Bower brought the statutory definitions section to the attention of the district court. Nevertheless, the district court has an independent responsibility to analyze the applicable statutes.

**15.** A third option would be to hold that the "and" connecting § 382.5(c)(1) with (2) was in-

tended to be an "or." Section 382.5(c) provides that to be a "qualified handicapped individual," one must *both* possess a ticket *and* meet "reasonable, nondiscriminatory contract of carriage requirements applicable to all passengers." If only one of these conditions had to be met, then there is no inconsistency between § 382.5 and the ACAA. Section 382.5(c)(2) would then be seen as a parallel ban on discrimination against those passengers without tickets. One objection to this

our view, the heart of § 382.5 is contained in its subsection (c)(2), which, by using the word "reasonable," balances the legitimate safety concerns of airlines related to transporting handicapped passengers against the desire to protect the handicapped from being singled out for discrimination.[16] Such balancing can take place without denying the protection of § 41075 to all passengers riding jumpseat on cargo airlines. Of course, we would prefer if the FAA and DOT had promulgated a regulation setting the proper balance, but the current version of § 382.5 neglected to do so in the cargo carrier context.

To summarize: We hold that FedEx is an "air carrier" within the meaning of the ACAA and therefore has some duty under the statute not to discriminate against a "qualified [handicapped] individual" when providing air transportation, but it will be for the district court to determine on remand in light of this opinion whether Bower is such an individual.

### 3. FedEx's Miscellaneous Arguments

 FedEx presents two other arguments to support its position. First, it claims that the legislative history of the ACAA evinces a congressional intent to apply the Act only to passenger airlines. S.Rep. No. 400, 99th Cong., 2d Sess. 4 (1986), *reprinted in* 1986 U.S.C.C.A.N. 2328, 2332. It is unnecessary to consult the legislative history in this instance, because the statute's terms are unmistakable. *Ratzlaf v. United States,* 510 U.S. 135, 146–48, 114 S.Ct. 655, 662, 126 L.Ed.2d 615 (1994); *Audette v. Sullivan,* 19 F.3d 254, 256 (6th Cir.1994). *Chevron* establishes a unidirectional rule for the use of legislative history. It can be used to clarify an otherwise ambiguous statutory term,

*Chevron,* 467 U.S. at 845, 104 S.Ct. at 2783, but it cannot be used to muddy an unambiguous statutory term. Moreover, even "peeking" at the legislative history in this case establishes that the ACAA was a reaction against the Supreme Court's decision in *United States Dep't of Transp. v. Paralyzed Veterans of Amer.,* 477 U.S. 597, 106 S.Ct. 2705, 91 L.Ed.2d 494 (1986), which held that only small commercial airlines were prohibited under Civil Aeronautics Board regulations from discriminating against the handicapped. The legislative history of the ACAA thus establishes that it was Congress's intent to expand the protection afforded to handicapped individuals when traveling on large commercial airlines. FedEx is correct that Senate Report 400 does not mention cargo carriers, but, contrary to FedEx's suggestion, there is nothing we glean from Congress's displeasure with *Paralyzed Veterans* to indicate that Congress intended for the federal courts to ignore the plain meaning of the ACAA and refuse to extend the ACAA to cargo carriers. If anything, Congress's negative reaction to a reading of regulations that narrowed protection to handicapped individuals counsels caution in reading the ACAA in a way to deny protection to handicapped individuals riding on cargo planes. FedEx falls victim to a common logical fallacy by arguing that simply because Congress referred exclusively to one kind of airline in the legislative history for illustrative purposes, Congress intended for courts to ignore the plain language of the statute, which obviously extends to cover other kinds of airlines.

Second, taking a cue from its "qualified handicapped individual" argument, FedEx also contends that 14 C.F.R. Part 382 does not make sense if applied to cargo carriers

---

approach might be that airlines would not be able to hold ticket-bearing passengers to the "reasonable, nondiscriminatory contract of carriage requirements applicable to all passengers" without violating § 41075 of the ACAA. This objection ignores the fact that a ticket is obviously a contract binding its purchaser/user to certain conditions that should be enforced unless they discriminate against the handicapped unreasonably. Again, we express no opinion on whether such an option is compulsory. FedEx argues that it has no contract of carriage with those who ride jumpseat, but obviously it does. The fringe

benefit of riding jumpseat is part of Bower's employment contract.

16. "While the new subsection does not prohibit specific practices on the part of air carriers, the [responsible Senate] Committee intends that airlines will not, in providing air transportation, impose upon handicapped travelers any regulations or restrictions unrelated to safety and unrelated to the nature and extent of any individual's handicap." S.Rep. No. 400, 99th Cong., 2d Sess. 4 (1986), *reprinted in* 1986 U.S.C.C.A.N. 2328, 2331.

because Subpart B of these regulations requires aisles of certain dimensions and armrests for passengers, for instance, whereas cargo planes are essentially open shells used to carry containers. Of course, even if FedEx were correct that Subpart B of these regulations applied to its operations, the argument could not reduce the coverage of the ACAA because the argument at best calls for a determination that the application of Part 382 to a cargo carrier is arbitrary and capricious. In other words, arguments of this type are challenges to the validity of these other regulations, not to the possibility of advancing a claim like Bower's under the ACAA itself. Moreover, FedEx is misconstruing Subpart B. 14 C.F.R. § 382.21, for instance, does impose various accessibility requirements relating to aisles and armrests, but these requirements are inapplicable to FedEx's cargo planes because they do not have the requisite number of passenger seats. *See, e.g.,* 14 C.F.R. § 382.21(a)(1)(i) (requirements applied to aircraft with 30 or more passenger seats); 14 C.F.R. § 382.21(a)(2) (requirements applicable to aircraft with 100 or more passenger seats). Again, we simply find evidence of the regulatory authorities distinguishing sensibly between cargo carriers and passenger carriers.

## III

We **REVERSE** the district court's order dismissing Bower's complaint for failure to state a claim because FedEx, a cargo carrier, is undoubtedly covered by the ACAA and **REMAND** for further proceedings in conformity with this opinion.