Richard A. **BOWER**, Equal Employment Opportunity Commission, Ernest O. McKnatt and John J. Oswald, Plaintiffs,

Richard A. Bower, Plaintiff–Intervenor,

Sharon Herdrich, Luis Morales, and Tim Weise, Plaintiff–Intervenors,

v.

**FEDERAL EXPRESS CORPORATION,** Defendant.

No. 94–2862.

United States District Court, W.D. Tennessee, Western Division.

Aug. 21, 2001.

Connie Westbrook, Law Office of Connie Westbrook, Memphis, TN, Carolyn Howard, Norwood, Howard & Atchley, Memphis, TN, for Richard A. Bower.

Clare O. Shields, David M. Rudolph, Richard M. Carter, Martin Tate Morrow & Marston, Memphis, TN, Brian Stacy Miller, Martin Tate Morrow & Marston, Memphis, TN, for Ernest O. McKnatt.

Jeana Littrell, Memphis, TN, Carolyn Howard, Norwood, Howard & Atchley, Memphis, TN, for John J. Oswald.

Steven W. Dills, Thomas J. Borek, Memphis, TN, Draga G. Anthony, Memphis, TN, for Equal Employment Opportunity Commission.

Virginia Gandy Connors, Colby S. Morgan, Jr., Memphis, TN, Karen E. Dooley, Steven H. Taylor, Memphis, TN, Rosemary Globetti, Memphis, TN, Thomas L. Henderson, James R. Mulroy, II, Lewis,

Fisher, Henderson & Claxton, Memphis, TN, for Federal Express Corporation.

Callan G. Carter, J. Kendrick Kresse, San Leandro, CA, Vicki Laden, Boxer & Gerson, Oakland, CA, Richard B. Fields, Law Office of Richard B. Fields, Memphis, TN, for Sharon Herdrich, Luis Morales, and Tim Weise.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT REGARDING THE ADA CLAIM; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT REGARDING THE ACAA CLAIM; AND GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS REGARDING THE THDA CLAIM

DONALD, District Judge.

Defendant, Federal Express Corporation ("FedEx"), filed a motion under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings, or in the alternative, for summary judgment in its case against Plaintiffs, Richard Bower ("Bower") and the Equal Employment Opportunity Commission ("EEOC"); and Plaintiffs–Intervenors, Sharon Herdrich ("Herdrich"), Luis Morales ("Morales"), and Tim Weise ("Weise"). Plaintiffs assert claims against Defendant for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 – 12213 (1994 & Supp.1998); the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1994 & Supp.1998); the Air Carriers Access Act of 1986 ("ACAA"), 49 U.S.C. § 41705 (1994 & Supp. IV 1998); and the Tennessee Handicap Discrimination Act ("THDA"), Tenn.Code Ann. § 8–50–103 (1993). The Court has jurisdiction pursuant to 28 U.S.C. § 1331. For the following reasons, the Court (1) denies Defendant's motion for summary judgment regarding Plain-

tiffs' ADA claims; (2) denies Defendant's motion for summary judgment regarding Plaintiffs' ACAA claims; and (3) grants Defendant's motion for judgment on the pleadings regarding Plaintiffs' claims under the THDA.

## I. Background Facts[1]

Defendant, a Federal Aviation Administration ("FAA") certified all-cargo carrier, provides its employees the fringe benefit of riding "jumpseat." Riding "jumpseat" means that Defendant permits its employees to use the limited passenger seating available on its cargo flights to travel to destinations within the United States and worldwide. Defendant currently employs five types of aircraft, B–727s, A300s, A310s, DC–10s, and MD–11s, with a varying number of available passenger seats, ranging from two to eight. (Camper Affidavit). Until 1998, Defendant's fleet also included 747s, which held twenty-one passenger seats. (Camper Affidavit). Defendant does not have ramps or terminals open to the general public and does not issue tickets to its employees riding jumpseat. Defendant does, however, maintain a "flight release" roster, which lists those employees who are authorized to ride jumpseat on particular flights. Defendant requires its employees seeking to ride jumpseat to take a "jumpseat skills test."

Bower was born with spina bifida, which requires him to use crutches and wear leg braces. He is disabled within the meaning of the Rehabilitation Act and the ADA. Bower began working for Defendant on August 7, 1989 and became a senior global operations control specialist. The job responsibilities of a senior global operations control specialist includes dispatching aircraft over assigned routes, insuring the orderly movement of freight on Defendant's aircraft, and arranging the ground transportation of freight.

Defendant never permitted Bower to ride jumpseat on one of its aircraft, despite Bower's contention that he was permitted to ride jumpseat by other cargo carriers that he has worked for in the past. Defendant allegedly also refused Bower's requests to make reasonable accommodations for his disability concerning the jumpseat privilege. Bower is an FAA-certified aircraft dispatcher and asserts that as a certified dispatcher, he must ride jumpseat a specified number of hours each year to maintain his license.[2]

On October 24, 1994, Bower filed a complaint, alleging violations of the ACAA, the Rehabilitation Act, and the THDA.[3] According to Bower, Defendant's policy of denying him the privilege of riding jumpseat caused him to suffer lost wages; to incur expenses for air travel; and to suffer emotional pain, inconvenience, mental anguish, humiliation, embarrassment, and the loss of the enjoyment of life. Bower seeks declaratory relief, injunctive relief, actual damages, compensatory damages, punitive

---

1. Many of the background facts are drawn verbatim from the Sixth Circuit's opinion, *Bower v. Federal Express Corp.*, 96 F.3d 200 (6th Cir.1996).

2. Defendant, however, challenged the accuracy of this statement in its December 6, 1996 answer.

3. In addition, Bower brought a retaliation claim, complaining that he was harassed, verbally threatened, intimidated, ridiculed, and

delayed promotion on account of his opposition to Defendant's discrimination. Bower also alleged that he was unlawfully denied use of Defendant's flight simulator.

On March 30, 2000, according to Federal Rule of Civil Procedure 42(b), the district court granted Defendant's motion to separate Bower's claims of retaliation and unlawful denial of access to the flight simulator from his claims of discrimination

damages, attorney's fees, and any other relief that the Court deems appropriate.

On December 2, 1994, Defendant filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Defendant argued that, as an all-cargo carrier, it was not subject to the ACAA, and that the Rehabilitation Act did not provide a private cause of action. On March 6, 1995, the district court granted Defendant's motion to dismiss. The district court found that the Rehabilitation Act and its accompanying regulations establish an administrative complaint system for individuals claiming discrimination based on handicap and does not provide a private cause of action in federal district court. Regarding the ACAA claim, the district court concluded that it does not apply to all-cargo carriers such as Defendant. In addition, because the district court dismissed the two federal claims, it declined to exercise supplemental jurisdiction over the remaining State law claims.

On April 5, 1995, Bower appealed the decision to the Sixth Circuit. Finding the ACAA to cover all-cargo carriers such as Defendant, the Sixth Circuit reversed the district court's decision and remanded the case for further proceedings. The Sixth Circuit did not reverse the district court's decision dismissing Bower's claims under the Rehabilitation Act.

On September 25, 1995, the EEOC filed a suit against Defendant on behalf of Bower and similarly-situated individuals, alleging violations of the ADA.[4] Bower subsequently moved to intervene in the EEOC's case, and he filed a complaint with an amendment. Both cases were consolidated in December 1996.[5] Further consolidation occurred on August 13, 1997, when the district court consolidated the instant case with *McKnatt v. Federal Express Corp.*[6] and *Oswald v. Federal Express Corp.*,[7] two cases also involving the privilege of riding jumpseat.[8]

On March 6, 1997, asserting an "unconditional right intervene ... pursuant to Fed.R.Civ.P. 24(a)(1), 42 U.S.C. § 12117, and 42 U.S.C. § 2000e–5(f)(1)," Herdrich, Morales, and Weise filed a motion to intervene in the instant case. Herdrich, Morales, and Weise are deaf employees of Defendant who were denied the privilege of riding jumpseat. These three plaintiffs also asserted, under Federal Rule of Civil Procedure 23, the rights of a class of unnamed deaf FedEx employees.

Herdrich, a resident of California, began working as a cargo handler for Defendant on January 18, 1988. She allegedly took and passed the jumpseat skills test, but was denied jumpseat privileges because she is hearing-impaired. Defendant allegedly neither provided Herdrich with any substitute benefits nor responded to her suggestions for reasonable accommodation.[9] Morales, a resident of California and disabled within the meaning of 42 U.S.C. § 12102(2), began working as a checker/sorter for Defendant on March 3, 1990. Morales was deterred from taking the jumpseat certification test by the preamble to the test and by knowledge of Defendant's policy of denying deaf employ-

---

4. Case number 95–2723 ("EEOC case").

5. The cases were consolidated under case number 94–2862.

6. Case number 96–3050.

7. Case number 96–3097.

8. *McKnatt* and *Oswald* were consolidated with the instant case only to the extent that they involved the same jumpseat issue. The district court later ordered McKnatt striken as a plaintiff.

9. Plaintiffs' complaints never specify the suggested reasonable accommodations.

ees the use of jumpseat travel. Weise, a resident of California and disabled within the meaning of 42 U.S.C. § 12102(2), began working as an equipment operator for Defendant on June 1990. Weise was deterred from taking the jumpseat certification test by the preamble to the test and by knowledge of Defendant's policy denying deaf employees the use of jumpseat travel. Weise asked if he could fly jumpseat if accompanied by a non-hearing-impaired relative, but Defendant refused his request.

Defendant filed its first motion for summary judgment on November 21, 1997, arguing that the Federal Aviation Act and its regulations prohibit Defendant from allowing Plaintiffs to use its jumpseats and that the ADA does not require an employer to make reasonable accommodations for benefits and privileges of employment. Less than three months later, Defendant filed a second motion to dismiss, or in the alternative for summary judgment as to Bower's claims under the ACAA.

On March 23, 1998, the district court certified a number of issues to the FAA, specifically, whether 14 C.F.R. § 121.583 and § 121.585 were applicable to Defendant's jumpseat program. All proceedings were stayed pending resolution of the aforementioned issues by the FAA.

On September 16, 1998, the district court denied Defendant's November 21, 1997 motion for summary judgment and Defendant's February 6, 1998 motion for judgment on the pleadings or in the alternative summary judgment. Both motions were denied without prejudice, permitting Defendant the opportunity to resubmit its motions after the stay was lifted.

On May 12, 1999, the FAA published its answer to the certified questions in the form of a bulletin titled "Occupancy of any Observer's Seat on the Flight Deck." Federal Aviation Administration, HBAT 99–05,

HBAW 99–05, HBGA 99–09 (May 12, 1999). The purpose of the Bulletin was to "provide[ ] policy and guidance material to appropriate personnel concerning the physical, cognitive, and language capabilities of any person requesting authorization or occupying any observer's seat located on the flight deck." Specifically, the Bulletin's appendix A enumerates the minimum physical, cognitive, and language capabilities one must possess to occupy an observer's seat on the flight deck. The Bulletin also states that the physical and cognitive demands that may be imposed on a person occupying a flight deck jumpseat "are significantly higher" than those demands imposed on a person occupying an exit row seat.

The district court concluded that the Bulletin left certain important questions unanswered. (Sept. 28, 1999 Status Conference). Therefore, the litigants drafted the following specific questions, which were sent to the FAA on November 11, 1999:

(1) Does the FAA's definition of "flight deck" encompass all areas of Fed Ex's cargo aircraft in which jumpseats are located?

(2) Does the [May 12, 1999] [B]ulletin apply to all such jumpseats?

(3) If not, do the requirements of 14 C.F.R. sections 121.583 and 121.585 apply to FedEx's jumpseats not located on the "flight deck"?

(4) If neither the Bulletin nor 14 C.F.R. 121.583 or 121.585 apply to the jumpseats not located on the "flight deck," what safety requirements, if any, apply to employees seeking to occupy those seats?

On January 19, 2001, Judge McCalla recused himself from the case, and it was later reassigned to this Court. In a letter dated April 4, 2001 and received by the

Court on April 9, 2001, the FAA held that the Defendant's "Jumpseat Certification Guide" inaccurately employs the term "jumpseat" to refer to all of the passenger seats located in a cargo aircraft that are not occupied by a flight crewmember while performing duties on board the aircraft. According to the FAA, passenger seats in a cargo aircraft are actually divided into two separate and distinct categories of seats, (1) passenger seats on the flight deck (cockpit) and (2) passenger seats outside the flight deck that are situated in the main cabin area of the cargo aircraft. (FAA Letter August 4, 2001 at 3–4). The passenger seats on the flight deck are flight-deck jumpseats and the passenger seats located outside the flight deck are supernumerary seats.

Significantly, the FAA concluded that the Bulletin applies to flight deck jumpseats exclusively. Furthermore, the FAA examined models of Defendant's A300, A310, DC–10, and MD–11 aircraft and held that all supernumerary passenger seats located outside the flight deck constitute exit row seats and are therefore subject to the requirements of 14 C.F.R. § 121.585(b), (c), and (d). As a result, all passenger seats in the A300, A310, DC–10, and MD–11 are, *at a minimum*, subject to section 121.585. The FAA failed to perform the same analysis regarding Defendant's 747s.[10]

On May 18, 2001, Defendant filed a motion for judgment on the pleadings or in the alternative for summary judgment. Bowers, Herdrich, Morales, Weise, and the EEOC all responded to this motion in June 2001.

## II. Legal Standards

### A. Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). Like Rule 12(b)(6), Rule 12(c) entitles the movant to a judgment if the plaintiff can prove no set of facts in support of its claim that would entitle it to relief.[11] *Carney v. Experian Info. Solutions, Inc.,* 57 F.Supp.2d 496, 500 (W.D.Tenn.1999); *Crane Constr. v. Wal–Mart Stores Inc.,* No. 93–2803, 1996 WL 495550 * 1 (W.D.Tenn. Mar.21, 1996). The Court must accept the well-pleaded material allegations of the non-movant as true. *See Crane Constr.,* 1996 WL 495550 at * 1.

If matters outside the pleadings are presented to the court, the motion shall be treated as one for summary judgment and is disposed of according to Federal Rule of Civil Procedure 56. *Carney,* 57 F.Supp.2d at 500. It is completely within the Court's discretion to accept materials outside the pleadings and to convert a Rule 12(c) motion into one for summary judgment. *Id.* (citation omitted).

---

**10.** Believing the issue irrelevant because Defendant has not employed 747s since December 20, 1997, the FAA failed to determine the status of Defendant's 747's passenger seats. Nevertheless, it remains an important issue in the instant case, because Plaintiffs can rightfully claim injury regarding their denial to ride jumpseat on the 747s until December 1997.

**11.** The standard of review for judgment on the pleadings under Rule 12(c) is indistinguishable from the standard of review for motions to dismiss based on Rule 12(b)(6). *Carney v. Experian Info. Solutions, Inc.,* 57 F.Supp.2d 496, 500 (W.D.Tenn.1999). The difference between the two rules is simply the timing of the motion to dismiss. For a dismissal under Rule 12(b)(6), the moving party must request judgment in a pre-answer motion or in the answer itself; whereas a motion for dismissal under Rule 12(c) may be submitted after the answer has been filed.

## B. Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). In other words, summary judgment is appropriately granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The party moving for summary judgment may satisfy its initial burden of proving the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. This in turn may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the opponent's evidence to show why it does not support a judgment for the nonmoving party. 10A Charles A. Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure* § 2727, at 35 (2d ed. Supp.1996).

Facts must be presented to the court for evaluation. *Kalamazoo River Study Group v. Rockwell Int'l Corp.,* 171 F.3d 1065, 1068 (6th Cir.1999). The court may consider any material that would be admissible or usable at trial. 10A Charles A. Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure* § 2721, at 40 (2d ed.1983). Although hearsay evidence may not be considered on a motion for summary judgment, *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 927 (6th Cir.1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Thaddeus–X v. Blatter,* 175 F.3d 378, 400 (6th Cir.1999).

In evaluating a motion for summary judgment, all the evidence and facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Walborn v. Erie County Care Facility,* 150 F.3d 584, 588 (6th Cir.1998). Justifiable inferences based on facts are also to be drawn in favor of the nonmovant. *Kalamazoo River,* 171 F.3d at 1068.

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348.

## III. Analysis

Because the Court relied upon material outside the pleadings when it considered Defendant's motion for judgment on the pleadings regarding the ADA and ACAA claims, Defendant's Rule 12(c) motion was converted to a motion for summary judgment under Rule 56. The Court, however, employed the Rule 12(c) standard regarding Defendant's challenge to Plaintiffs' THDA claims.

## A. ADA Claim

■ The ADA dictates that, "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (emphasis added). A covered entity is an employer with fifteen or more employees. 42 U.S.C. § 12111(2), (5). When asserting an ADA claim, a plaintiff must establish a prima facie case of unlawful discrimination by demonstrating (1) that he is a disabled individual within the meaning of the ADA; (2) that he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) that the employer either refused to make a reasonable accommodation for the plaintiff's disability or made an adverse employment decision against the plaintiff solely because of his disability. *Smith v. Ameritech*, 129 F.3d 857, 866 (6th Cir.1997). In the instant case, Plaintiffs assert that Defendant violated the ADA by refusing them the privilege of riding jumpseat and by failing to make the reasonable accommodations that would enable them to enjoy that privilege.

■ Plaintiffs have established a prima facie case of unlawful discrimination under the ADA. First, Plaintiffs are all disabled individuals within the meaning of the ADA.[12] Second, Plaintiffs are qualified to perform the essential functions of their jobs with or without reasonable accommodation.[13] Third, Plaintiffs were all denied the fringe benefit of flying jumpseat, and Defendant refused to make any reasonable accommodations. Despite Defendant's argument that the ADA does not cover personal benefits, § 12112(a) specifically includes "privileges of employment" within its coverage. 42 U.S.C. § 12112(a). Similarly, federal regulations implementing the ADA hold that "fringe benefits available by virtue of employment" are covered by the ADA. 29 C.F.R. § 1630.4(f) (2000); *see also Gonzales v. Garner Food Servs., Inc.*, 89 F.3d 1523, 1526 n. 9 (11th Cir.1996); *Lewis v. Aetna Life Ins. Co.*, 982 F.Supp. 1158, 1161 (E.D.Va.1997). Defendant stipulated that it offers its full-time and permanent part-time employees the opportunity to ride jumpseat on its aircraft. (February 10, 1995 Stipulations at 3). Therefore, riding jumpseat constitutes a fringe benefit covered by the ADA.

■ The plain text of 29 C.F.R. § 1630.15(e) (2000), however, holds that an employer's compliance with other federal regulations, including federal aviation regulations, is a complete defense under the ADA. *Thoms v. ABF Freight Sys., Inc.*, 31 F.Supp.2d 1119, 1127 (E.D.Wis.1998); *see also Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 570 n. 16, 119 S.Ct. 2162, 2171 n. 16, 144 L.Ed.2d 518 (1999). According to the FAA, all of the jumpseats on Defendant's current fleet are subject, at a minimum, to the regulations governing exit row seats. The federal exit row seating requirements hold, "No certificate holder

---

**12.** In a document filed on February 10, 1995, Defendant stipulated that Bower is disabled within the meaning of the Rehabilitation Act of 1973 and the ADA. Herdrich, Morales, and Weise are deaf and communicate with their fellow employees and supervisors through sign language. (May 30, 1997 Declaration of Herdrich at 2; May 30, 1997 Declaration of Morales at 2; May 30, 1997 Declaration of Weise at 2).

**13.** The Court assumes that Plaintiffs are qualified individuals. Plaintiffs all worked for Defendant for an extended period of time, and Defendant has not challenged their qualifications as employees.

may seat a person in a seat affected by this section if the certificate holder determines *that it is likely* that the person would be unable to perform one or more of the applicable functions listed in paragraph (d) of this section ..." 14 C.F.R. § 121.585(b) (2001) (emphasis added). An individual sitting in an exit row seat must be able to operate the emergency exit; stow or secure the emergency exit door so that it will not impede use of the exit; activate the slide, and stabilize the slide after deployment to assist others in getting off the slide; pass expeditiously through the emergency exit; and assess, select, and follow a safe path away from the emergency exit. 14 C.F.R. § 121.585(d)(4), (7), (8), (9), (10). Significantly, the regulations allow a certificate holder a degree of discretion to disqualify individuals who it determines are not "likely" to be able to perform the above-listed functions. 14 C.F.R. § 121.585(b).

In the instant case, using its discretion, Defendant disqualified individuals with restricted mobility and hearing impairments.[14] The regulations do not require Defendant to test individually each employee to determine whether they can sit in any of the flight deck jumpseats or supernumerary seats on its airplanes. Therefore, in complying with the federal aviation regulations, Defendant may discriminate against Bower and the other Plaintiffs, despite Bower's assertions that he rode jumpseat for eight different air cargo carriers; that he sat in exit seats on passenger-carrying airlines; that he possesses the physical ability to perform the required duties of someone sitting in an exit row. (June 20, 2001 Bower's Opposition to Def.'s Mot.Ex. 14 at 13–15).

■ Based on its compliance with the regulations, Defendant would appear to defeat Plaintiffs' ADA claims. Nevertheless, prohibited discrimination under the ADA includes an entity's failure to make reasonable accommodations for a qualified individual's disabilities. *See* 42 U.S.C. § 12112(b)(5)(A); *Kiphart v. Saturn Corp.,* 251 F.3d 573 586 (6th Cir.2001). Reasonable accommodation includes not only those measures necessary for an employee to perform the essential functions of his position, but also those that enable the employee to enjoy equal privileges and benefits of employment as are enjoyed by other similarly-situated employees without disabilities. *See* 29 C.F.R. § 1630.2(*o*)(1)(iii). Once an employee establishes that a reasonable accommodation is possible, the employer must then prove that such reasonable accommodation would impose an undue burden or hardship on the employer. *See Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1186 n. 12 (6th Cir.1996). The question whether an accommodation is reasonable and whether it would pose an undue hardship on the employer are questions of fact. *See McWright v. Alexander,* 982 F.2d 222, 227

---

**14.** According to its "Personal Policy and Procedure Manual," Defendant disqualifies employees suffering from or experiencing blindness, paraplegia, deafness, restricted mobility, casts on limbs or body, physical size, and pregnancy from jumpseat travel.

Because its policy was applied to all of its employees regardless of whether they were disabled or not, Defendant argues that it did not make a "disability-based distinction" and did not violate the ADA. Nevertheless, the concept of "disability-based distinction" and

the cases Defendant cites, *Parker v. Metropolitan Life Ins. Co.,* 121 F.3d 1006 (6th Cir.1997) and *Krauel v. Iowa Methodist Med. Center,* 95 F.3d 674 (8th Cir.1996), specifically involve the ADA's relationship with health insurance coverage. *See* EEOC: Interim Enforcement Guidance on Application of ADA to Health Insurance, (June 8, 1993), *reprinted in* Fair. Empl.Prac.Man. 405:7118(BNA). Therefore, Defendant's arguments regarding disability-based distinctions are not pertinent and warrant no further analysis at this point.

(7th Cir.1992). Although the FAA has designated all of the jumpseats on Defendant's current fleet of B727s, A300s, A310s, DC–10s, and MD–11s as exit row seats or flight deck seats, it may be possible to rearrange the seats or add additional seats which the FAA would not designate as exit row seats or flight deck seats, thereby reasonably accommodating Plaintiffs.[15] These issues of reasonable accommodation and undue hardship must be examined by the factfinder after discovery is completed and all the evidence has been presented. Therefore, the Court denies Defendant's motion for summary judgment with regard to Plaintiffs' ADA claims.[16]

## B. ACAA

According to the ACAA

In providing air transportation, an air carrier may not discriminate against any otherwise qualified individual on the following grounds:

(1) the individual has a physical or mental impairment that substantially limits one or more major life activities.

(2) the individual has a record of such an impairment.

(3) the individual is regarded as having such an impairment.

49 U.S.C. § 41705.[17] In *Bower v. Federal Express Corp.*, 96 F.3d 200 (6th Cir.1996), the Sixth Circuit concluded that FedEx is an "air carrier" for purposes of 49 U.S.C. § 41705. Although the Secretary of the Department of Transportation ("DOT") has the authority to exempt any all-cargo carrier from § 41705 by the issuance of a certificate under 49 U.S.C. § 41103(d)(1)(B), the Sixth Circuit found that the DOT had chosen not to grant such an exemption certificate to Defendant. *Bower*, 96 F.3d at 205.

Nevertheless, according to Defendant, both parties and the Sixth Circuit overlooked the exemption automatically granted to cargo carriers by the FAA in 14 C.F.R. § 291.31. Section 291.31 reads

Each section 41102 or 41103 air carrier providing cargo operations in interstate air transportation is, with respect to such transportation, exempted from the following portions of the Statute only if and so long as it complies with the provisions of this part and the conditions imposed herein, *and to the extent necessary to permit it to conduct cargo operations in interstate air transportation:*

(1) Sections 41310, *41705,*

---

**15.** In its March 6, 1995 order of dismissal, the district court wrote, "As discussed during the conference, if the FAA decides these issues in defendant's favor, it may be appropriate for it to consider whether defendant could obtain a waiver, or could change the configuration of the seats on its aircraft in order to provide access to plaintiffs." (March 23, 1998 Order at 1 n. 1). Once again, at the September 28, 1999 status conference, Bower's attorney sought to question the FAA as to whether Defendant could change in the configuration of the seats of its aircraft to provide access to the plaintiffs. (Tr. Sept. 28, 1999 Status Conference at 18). Despite the district court's response that the specific question of reconfiguration had already been sent to the FAA, and "we [Court and litigants] ought to regard that has having been dealt with," (Tr. Sept. 28, 1999 at 18), there is no evidence on record that the FAA ever addressed the possibility of reconfiguring Defendant's aircraft as a reasonable accommodation.

**16.** In addition, the Court finds that there is no longer a viable claim under the Rehabilitation Act of 1973. On March 6, 1995, finding that the Rehabilitation Act of 1973 did not provide for a private cause of action, the district court dismissed Bower's claim under the Rehabilitation Act. On March 6, 1997, Herdrich, Morales, and Weise filed their complaint in intervention, but this complaint did not allege any violations of the Rehabilitation Act.

**17.** The ACAA provides a private cause of action. *See Shinault v. American Airlines, Inc.,* 936 F.2d 796, 800 (5th Cir.1991).

14 C.F.R. § 291.31 (1997) (emphasis added).

Bower, however, argues that Defendant has not demonstrated that it complies with all the provisions of 14 C.F.R. part 14. Bower also asserts that Defendant's act of carrying passengers on its aircraft for non-business reasons is not necessary for Defendant to conduct its cargo operations in interstate business. (February 20, 1998 Bower's Memo. in Opposition to Defendant's Motion to Amend Answer at 5).

Lacking material to guide its analysis of § 291.31, the Court finds the regulation's plain language to be straightforward. Section 291.31 exempts air carriers "to the extent necessary to permit [the air carrier] to conduct cargo operations in interstate air transportation." For a component of Defendant's cargo operations to be "necessary" means that Defendant could not conduct its cargo operations in the component's absence. Therefore, to decide whether Defendant is exempt from the ACAA under section 291.31, the Court must determine which flight deck jumpseats and supernumerary seats, *if any,* could be removed without arresting Defendant's ability to conduct its cargo operations in interstate air transportation.

■ Because the section 291.31 exemption is an affirmative defense, Defendant bears the burden of proving that it has complied with the provisions of part 291 and that its flight deck seats and supernumerary seats are necessary for it to conduct cargo operations in air transportation. *See generally Fonseca v. Consolidated Rail Corp.,* 246 F.3d 585, 591 (6th Cir. 2001). Defendant has not yet presented facts regarding the necessity of flight deck jumpseats and supernumerary seats. Therefore, the Court denies Defendant's motion for summary judgment because if finds that a material dispute exists regarding whether Defendant complied with all

the provisions of part 291 and whether flight deck jumpseats and supernumerary seats, *if any,* could be removed without arresting Defendant's ability to conduct its cargo operations in interstate air transportation.

## C. THDA

The THDA prohibits discrimination against a handicapped employee in the terms and conditions of employment based solely upon the employee's handicap. Tenn.Code Ann. § 8–50–103. Section 8–50–103 mirrors the ADA including the ADA's requirement of reasonable accommodation.

■ Unlike the ADA, however, the THDA is preempted by the Federal Aviation Act. Included in the Federal Aviation Act is the following provision: "[A] State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or *service* of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b) (emphasis added). The United States Supreme Court concluded that "State enforcement actions having a connection with or reference to airline 'rates, routes, or services' are pre-empted under 49 U.S.C. [§ 41713]." *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 384, 112 S.Ct. 2031, 2037, 119 L.Ed.2d 157 (1992).

In *Wellons v. Northwest Airlines, Inc.,* 165 F.3d 493 (6th Cir.1999), a plaintiff, who was refused employment with Northwest Airlines, brought a racial discrimination claim under Michigan law. The Sixth Circuit held that the plaintiff's state statutory racial discrimination claim against an airline is not preempted by § 41713, because claims of racial discrimination are too tenuously related to an airline's rates or services. *Wellons,* 165 F.3d at 495. Con-

versely, the Sixth Circuit found that claims of discrimination based on an employee's physical characteristics, such as eyesight or size, that "might have some bearing on the individual's ability to render service safely and efficiently" are preempted. *Wellons*, 165 F.3d at 495.

In the instant case, Defendant's discrimination relates to Plaintiffs' physical characteristics—specifically, their ability to perform the physical duties of a passenger sitting in a flight deck jumpseat or a supernumerary seat. This is not a tenuous connection and therefore the state law is preempted.

## D. Exemption

Defendant also argues that Plaintiffs should have sought an exemption under 49 U.S.C. § 44701(e). Although § 44701(e) provides for an exemption from the regulations prescribed under §§ 44701(a) and (b), Defendant fails to convince the Court that Plaintiffs were required to seek such an exemption before bringing their case to district court.

## IV. Conclusion

For the foregoing reasons, the Court (1) denies Defendant's motion for summary judgment regarding Plaintiffs' ADA claims; (2) denies Defendant's motion for summary judgment regarding Plaintiffs' ACAA claims; and (3) grants Defendant's motion for judgment on the pleadings regarding Plaintiffs' claims under the THDA.