Richard A. **BOWER, Equal Employment Opportunity Commission,** and John Oswald, **Plaintiffs,**

Richard A. **Bower, Plaintiff–Intervenor**

**Sharon Herdrich, Luis Morales,** and Tim Wiese, **Plaintiff–Intervenors**

v.

**FEDERAL EXPRESS CORPORATION,** Defendant.

No. 94–CV–2862 D/A.

United States District Court, W.D. Tennessee, Western Division.

Oct. 30, 2006.

---

Carolyn Howard, Norwood Howard & Atchley, Deidre Smith, Faye A. Williams, Katharine W. Kores, Terry L. Beck, Equal Employment Opportunity Commission, Memphis, TN, Connie Westbrook, Law Office of Connie Westbrook, Germantown, TN, for Plaintiffs.

Callan G. Carter, J. Kendrick Kresse, Jennifer Pesek, San Leandro, CA, Richard B. Fields, Law Office of Richard B. Fields, Memphis, TN, for Plaintiff–Intervenors.

Colby S. Morgan, Jr., Fedex Corporation Legal Department, James R. Mulroy, II, Thomas L. Henderson, Lewis Fisher Henderson & Claxton, LLP Memphis, TN, Todd M. Saranecki, Kaplan Begy & Von Ohlen, Chicago, IL, for Defendant.

## ORDER DENYING EQUAL EMPLOYMENT OPPORTUNITY COMMISSION AND PLAINTIFF–INTERVENORS HERDRICH, MORALES AND WEISE'S MOTION FOR PARTIAL SUMMARY JUDGMENT

DONALD, District Judge.

Before the Court is the motion (D.E.# 484) of the Equal Employment Opportunity Commission ("EEOC") and Plaintiff–Intervenors Sharon Herdrich ("Herdrich"), Luis Morales ("Morales"), and Tim Wiese ("Wiese") (collectively "Plaintiffs")[1] for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs filed the present action against Defendant Fed-

---

1. Plaintiff–Intervenor Richard Bower has not    joined this motion.

eral Express Corporation ("Defendant") for violations of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213 (2000). Specifically, Plaintiffs allege that under 42 U.S.C. § 12112(b)(5)(A), Defendant discriminated against them and other disabled employees by failing to provide a reasonable accommodation, i.e., an alternative benefit, to Defendant's "jumpseat" travel program—a program Plaintiffs were prevented from participating in due to their disabilities.

Plaintiffs' motion for partial summary judgment presents the Court with two issues: (1) whether free third-party commercial air travel for disabled employees is an accommodation to Defendant's jumpseat travel program that is "reasonable" under 42 U.S.C. § 12112(b)(5)(A); and (2) whether providing free third-party commercial air travel to disabled employees constitutes an "undue hardship" on Defendant under 42 U.S.C. § 12112(b)(5)(A). (Pls.' Mem. Supp. Mot. Partial Summ. J. 7–14.) The Court has jurisdiction pursuant to 28 U.S.C. § 1331 (2000). For the reasons stated herein, the Court **DENIES** Plaintiffs' motion for partial summary judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Court relies extensively on the factual and procedural background detailed in *Bower v. Federal Express Corp.*, 287 F.Supp.2d 840, 842–44 (W.D.Tenn.2003), and *Bower v. Federal Express Corp.*, 156 F.Supp.2d 678, 681–684 (W.D.Tenn.2001). Defendant, a Federal Aviation Administration ("FAA") certified all-cargo carrier, previously provided its employees with the fringe benefit of a personal "jumpseat"

travel program. The jumpseat program permitted Defendant's employees to use the limited passenger seating available on its cargo aircraft to travel to destinations within the United States and worldwide for business and personal reasons. Subsequent to the terrorist attacks on September 11, 2001, Defendant suspended personal travel under the jumpseat program for all employees except flight crewmembers and Air Operations Division Stagers. (Def.'s Resp. Supp. Mem. Pls.' Mot. Partial Summ. J. ¶ 10.) Business travel under the jumpseat program was restored for all employees on August 15, 2002, and personal travel under the jumpseat program was restored for all employees on June 15, 2004. (*Id.*) However, on August 15, 2005, personal and business travel under the jumpseat program was suspended again for safety and security reasons. (*Id.*)

Prior to the suspension of the jumpseat program, Defendant maintained a "flight release" roster, which listed those employees who were authorized to participate in the jumpseat program. To be included on the roster, employees were required to pass a "jumpseat skills test" as well as satisfy the safety-related performance requirements imposed by Federal Aviation Regulation 14 C.F.R. § 121.585.[2] Employees who self-identified any impairment or disability that would prevent them from performing the § 121.585 safety-related performance requirements were initially prevented from participating in the jumpseat program. These employees, however, were allowed to appeal that denial to Defendant's Jumpseat Review Board.

Richard Bower, an individual currently employed by Defendant, was born with

---

**2.** The relevant portion of 14 C.F.R. § 121.585 requires Defendant not to place anyone in a jumpseat that "lacks sufficient mobility, strength, or dexterity in both arms and hands, and both legs," or "lacks sufficient aural capacity to hear and understand instructions shouted by flight attendants without assistance beyond a hearing aid." 14 C.F.R. § 121.585(b)(1), (5) (2006).

spina bifida, a disability that requires him to use crutches and wear leg braces. Bower, who is disabled within the meaning of the ADA,[3] failed to satisfy the § 121.585 safety-related performance requirements, and thus was prevented from participating in Defendant's jumpseat program. Prior to the suspension of the jumpseat program, Bower requested that Defendant reasonably accommodate his disability, but Defendant denied Bower's request. As a result of this denial, Bower filed an individual complaint against Defendant on October 24, 1994. On September 25, 1995, the EEOC filed a complaint against Defendant on behalf of Bower and similarly-situated employees, alleging violations of the ADA.[4] Bower subsequently intervened in the EEOC's case, and filed an amended complaint. Both cases were eventually consolidated in December 1996,[5] and further consolidation occurred on August 13, 1997, when the district court consolidated the instant case with *McKnatt v. Federal Express Corp.*[6] and *Oswald v. Federal Express Corp.*[7]—two cases involving Defendant's jumpseat program.[8]

On March 6, 1997, Plaintiffs Herdrich, Morales, and Weise moved to intervene in the instant case. Plaintiffs, who are disabled within the meaning of the ADA, are deaf employees of Defendant who communicate with their fellow employees and supervisors through sign language.

Herdrich, a resident of California, began working as a cargo handler for Defendant on January 18, 1988. She allegedly took and passed the jumpseat skills test, but was denied jumpseat privileges due to the § 121.585 safety-related performance requirements. Morales, a resident of California, began working as a checker/sorter for Defendant on March 3, 1990. Morales claims that he was deterred from taking the jumpseat skills test because of "the preamble to the test" and because Defendant had a policy of preventing deaf employees from using the jumpseat program. Weise, a resident of California, began working as an equipment operator for Defendant in June 1990. Weise also claims that he was deterred from taking the jumpseat skills test because of "the preamble to the test" and because Defendant had a policy of preventing deaf employees from using the jumpseat program. Weise further claims that he requested that Defendant accommodate his disability by allowing a nonhearing-impaired relative to travel with him, but the request was denied.

Defendant filed its first motion for summary judgment (D.E.# 185) on November 21, 1997, arguing that the § 121.585 safety-related performance requirements prohibited Defendant from allowing Plaintiffs to participate in the jumpseat program. Defendant also argued that the ADA does not require an employer to make reasonable accommodations for benefits and privileges of employment. On March 23, 1998, the district court certified a number of issues to the FAA, and Defendant's motion for

---

3. The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (2000).

4. Originally, case number 95–2723.

5. The cases were consolidated under current case number 94–2862.

6. Case number 96–3050.

7. Case number 96–3097.

8. McKnatt and Oswald were consolidated with the instant case only to the extent that they involved the same jumpseat issue. The district court later ordered McKnatt stricken as a plaintiff.

summary judgment was denied without prejudice for resubmittal following the FAA's ruling.

The FAA concluded that Defendant's jumpseat program was subject to the § 121.585 safety-related performance requirements. Defendant then re-filed its motion for summary judgment (D.E.# 336) on May 18, 2001. This Court denied Defendant's motion for summary judgment, holding that even though Plaintiffs were prohibited by § 121.585 from participating in Defendant's jumpseat program, Defendant still may have unlawfully discriminated against Plaintiffs by failing to provide Plaintiffs with a reasonable accommodation to the jumpseat program. *Bower*, 156 F.Supp.2d at 686–87.

Following the denial of Defendant's motion, the parties conducted more discovery and participated in three unsuccessful settlement conferences, which took place on October 25, 2001, June 3, 2002, and March 4, 2003. On June 13, 2003, the parties filed cross motions for partial summary judgment (D.E.# 437, 438, 440, 441), and stipulated to the following facts: (1) As a benefit, Defendant has allowed eligible employees to use the privilege of free personal jumpseat travel on its cargo aircraft within policy guidelines, and subject to federal law and regulations, on a space available basis; (2) Defendant suspended the jumpseat program subsequent to the September 11, 2001 attacks[9]; (3) Defendant's jumpseat program must comply with the § 121.585 safety-related performance requirements, including exclusion of employees who cannot meet the safety-related performance requirements imposed by § 121.585; (4) some excluded employees are qualified individuals with a disability as defined by the ADA, and they have been excluded due to their inability to meet one or more of the § 121.585 safety-related performance requirements because of their disabilities; and (5) it would be an undue hardship on Defendant to reconfigure its cargo aircraft to enable disabled employees to meet the § 121.585 safety-related performance requirements.

On October 15, 2003, this Court denied Defendant's motion for partial summary judgment, and granted Plaintiff's motion for partial summary judgment. The Court held that reasonable accommodations for disabled employees encompassed providing disabled employees with alternative benefits. *Bower*, 287 F.Supp.2d at 845. On November 15, 2005, Plaintiffs filed the present motion for partial summary judgment. Defendant responded to this motion on December 29, 2005, and Plaintiffs filed a reply to Defendant's response on February 16, 2006.

## II. LEGAL STANDARD

The Court notes that Plaintiffs' have moved for partial summary judgment. Rule 56(d) of the Federal Rules of Civil Procedure governs motions for partial summary judgment:

**(d) Case Not Fully Adjudicated on Motion.** If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing on the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts

---

**9.** As noted above, Defendant has since reinstated personal travel under the jumpseat program on June 14, 2005, and once again suspended personal travel under the jumpseat program on August 15, 2005. Defendant's actions were subsequent to these cross motions for partial summary judgment, and thus, were not stipulated to.

that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceeding in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

Fed.R.Civ.P. 56(d). In other words, a "partial summary 'judgment' is not a final judgment, and therefore, is not appealable." Fed.R.Civ.P. 56(d) advisory committee's note. "[P]artial summary judgment is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case." *Id.*

In their motion for partial summary judgment, Plaintiffs' have essentially requested that the Court hold that Defendant did, in fact, engage in discrimination under the ADA. The ADA specifically states that an employer engages in discrimination when it fails to make *"reasonable accommodations* to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant employee, unless [the employer] can demonstrate that the accommodation would impose an *undue hardship* on the operation of the business of such covered entity." 42 U.S.C. § 12112(a)(5)(A) (2000) (emphasis added). If the Court grants Plaintiffs' present motion, i.e., finds that Plaintiffs' proposed accommodation is reasonable and does not constitute an undue hardship on Defendant, the Court, in effect, would be rendering a final judgment. Therefore, because Plaintiffs' present motion seeks a final judgment rather than a mere pretrial adjudication of an issue for trial, the Court will review Plaintiffs' motion as a motion for summary judgment.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). Although hearsay evidence may not be considered on a motion for summary judgment, *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 927 (6th Cir.1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thaddeus–X v. Blatter,* 175 F.3d 378, 400 (6th Cir.1999). The evidence and justifiable inferences based on facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Wade v. Knoxville Utilities Bd.,* 259 F.3d 452, 460 (6th Cir.2001).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the nonmoving party's evidence to show why it does not support a judgment for the nonmoving party. 10A Charles A. Wright et al., *Federal Practice and Procedure* § 2727, at 35 (2d ed.1998).

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] plead-

ing, but … must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. ANALYSIS

The ADA states in pertinent part that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (2000). Discrimination includes an employer's failure to make "*reasonable* accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant employee, unless [the employer] can demonstrate that the accommodation would impose an *undue hardship* on the operation of the business of such covered entity." 42 U.S.C. § 12112(a)(5)(A) (2000) (emphasis added).

The Sixth Circuit Court of Appeals uses a burden-shifting framework for deciding whether a proposed accommodation is reasonable and presents an undue hardship.[10] *See Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 (6th Cir.1998). First, the disabled employee "bears the burden of proposing an accommodation and showing that accommodation is objectively reasonable." *Id.* If the disabled employee satisfies this initial burden, "then the employer bears the burden of proving that the accommodation is unreasonable and imposes an 'undue hardship' on the employer." *Cehrs v. Northeast Ohio Alzheimer's Research Center*, 155 F.3d 775, 781 (6th Cir.1998) (citing *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1186

**10.** Determining whether a proposed accommodation is reasonable and/or an undue hardship requires an understanding of the relationship between the two terms.

The interrelationship between the terms "reasonable" accommodation and "undue hardship" is perhaps somewhat complex. In a case-specific context, the terms are virtually mutually exclusive in the sense that "undue hardship" defines which accommodations an employer will be required to adopt. If an employer shows that a proposed accommodation imposes an undue hardship, then it would be "unreasonable" to require this employer to adopt that accommodation, regardless of whether another employer, in a different factual context, may be required to adopt that same accommodation. More broadly, however, the terms can co-exist. In our view, determining whether a proposed accommodation is "reasonable" requires a factual determination of reasonableness (perhaps through a cost-benefit analysis or examination of the accommodations undertaken by other employers) untethered to the defendant employer's particularized situation. Once a determination is made that a proposed accommodation is, in a sense, "generally" reasonable, the defendant employer then bears the burden of showing that the accommodation imposes an undue hardship upon it, given the employer's specific situation. Viewed in this way, the parties' respective burdens of persuasion become clear. The plaintiff bears the initial burden of showing that a "reasonable" accommodation is possible. If the plaintiff does so, the defendant employer has an opportunity to persuade the fact finder that the proposed accommodation imposes an undue hardship.
*Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1183 n. 10 (6th Cir.1996).

n. 12 (6th Cir.1996)). Whether a proposed accommodation is reasonable and whether it constitutes an undue hardship is a question of fact. *See McWright v. Alexander*, 982 F.2d 222, 227 (7th Cir.1992).

This Court has previously held that Defendant's jumpseat program was and is a fringe benefit that constitutes a "privilege" of employment under the ADA. *See Bower v. Federal Express Corp.*, 287 F.Supp.2d 840, 845 (W.D.Tenn.2003). The Court has also recognized that an "accommodation" can include providing similar or comparable alternative benefits to those benefits denied to disabled employees because of their disability. *Id.* at 846. Finally, the Court has found that "a genuine issue of material fact [exists] as to a commercial air travel program's suitability as a reasonable accommodation" to Defendant's jumpseat program. *Id.* at 847. The Court is now asked to determine whether a genuine issue of material fact exists as to the reasonableness of Plaintiffs' proposed accommodation—free round-trip tickets for disabled employees aboard third-party commercial air carriers—and whether a genuine issue of material fact exists as to whether implementation of such an accommodation constitutes an "undue hardship" on Defendant.

## A. Reasonable Accommodation

■ The "initial burden of articulating a reasonable accommodation need not be onerous." *Cehrs*, 155 F.3d at 781. The disabled employee need only "suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." *Id.; see also Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir.1995). In the context of fringe benefits, such as Defendant's jumpseat program, a reasonable accommodation constitutes " 'modifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are en-

joyed by its other similarly situated employees without disabilities.' " *Bower*, 287 F.Supp.2d at 845 (quoting 29 C.F.R. § 1630.2(*o*)(1)(iii) (2006)).

Plaintiffs argue that annually providing one or two free roundtrip tickets aboard third-party commercial aircraft to disabled employees is and would have been a reasonable accommodation to Defendant's jumpseat program because it produces benefits similar or comparable to the benefits nondisabled employees enjoyed under Defendant's jumpseat program. (Pls.' Mem. Supp. Mot. Partial Summ. J. 9.) Other than noting that both benefits involve air travel, however, Plaintiffs fail to state any other similarities between third-party commercial air travel and travel aboard Defendant's cargo aircraft.

Plaintiffs further assert that their proposed accommodation is reasonable because the costs associated with purchasing and providing free airline tickets to disabled employees is minimal. Plaintiffs, noting that Defendant "has an already established Global Travel Office where employees may purchase tickets for business and personal travel on commercial airlines at discount rates," argue that a structure already exists for Defendant to purchase tickets for disabled employees. (*Id.*) Plaintiffs also submit that the actual cost of an airline ticket for a disabled employee would be $100 because "[f]or the fiscal year June 1, 2004 to May 31, 2005, the average gross ticket price purchased through the Global Travel Office was $100." (*Id.*)

Defendant submits that Plaintiffs' proposed accommodation is not reasonable because travel aboard third-party commercial aircraft is not similar or equal to the benefits nondisabled employees enjoyed under Defendant's jumpseat program. Defendant asserts that its own aircraft provided limited seating, and that the

jumpseat program often required employees to "fly on a space available, stand-by basis, usually in the middle of the night, in a dimly lit cargo bay of the aircraft." (Def.'s Resp. Supp. Mem. Pls.' Mot Partial Summ J. 9.) Defendant further asserts that there were "no flight attendants" aboard its aircraft, and that employees were "frequently bused to the aircraft, or . . . walk[ed], while carrying their luggage up a flight of portable stairs to the cabin area where they must stow the luggage themselves." (*Id.* at 10.)

Defendant also challenges Plaintiffs' cost/benefit analysis, arguing that Plaintiffs "fail to properly define how costs and benefits are measured." (*Id.* at 17.) Defendant asserts that "employees jumpseated at virtually no marginal cost to the company," and that the costs of providing and purchasing free airline travel for disabled employees "would clearly exceed the benefits to be derived where no evidence indicates that the requested accommodation would permit the Plaintiffs to perform the essential functions of their jobs." (*Id.*) Defendant also submits that the administrative costs of determining which employees qualify as disabled as defined by the ADA would outweigh any personal benefits that Plaintiffs and other disabled employees would enjoy. (*Id.* at 27.)

█ Upon review of the parties' arguments, the Court affirms its previous decision, *see Bower*, 287 F.Supp.2d at 847, and holds that a genuine issue of material fact exists as to whether Plaintiffs' proposed accommodation is reasonable under 42 U.S.C. § 12112(a)(5)(A). Although Plaintiff has proposed a plausible accommodation/alternative benefit to Defendant's jumpseat program, the reasonableness of the accommodation remains an issue for the factfinder to determine.

### B. Undue Hardship

█ Because a genuine issue of material fact exists as to whether Plaintiffs' proposed accommodation is reasonable, i.e., Plaintiffs have not yet satisfied their initial burden, the Court need not address whether the implementation of Plaintiffs' proposed accommodation would constitute an undue hardship on Defendant. Accordingly, undue hardship remains an issue for the factfinder to determine.

### IV. CONCLUSION

For the aforementioned reasons, the Court finds that a genuine issue of material fact exists as to (1) whether Plaintiffs' proposed accommodation is reasonable, and as to (2) whether Plaintiffs' proposed accommodation constitutes an undue hardship on Defendant. Accordingly, Plaintiffs' motion for summary judgment is **DENIED.**

**IT IS SO ORDERED.**